IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY DISMUKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-1175-M-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Rodney Dismuke seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be affirmed.

### Background

Plaintiff alleges that he is disabled as a result of a herniated disk and chronic pain. After his application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on November 5, 2012. *See* Administrative Record [Dkt. No. 10] ("Tr.") at 25-55. At the time of the hearing, Plaintiff was 51 years old. *See id.* at 19. He is a high school graduate and has past work experience as a home health aide, janitor, hospital cleaner, store laborer, and loader/unloader. *See id.* at 50, 177. Plaintiff has not engaged in substantial gainful activity since July 17, 2009. *See id.* at 14.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that Plaintiff suffered from degenerative disc disease with herniated disc and radiculopathy at L-5, obesity, hypertension, history of left shoulder surgery, and discoid lupus, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of work but could not return to his past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a cashier II, sales attendant, and mail clerk – jobs that exist in significant numbers in the national economy. Given his age, education, and exertional capacity for work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 12-20.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that (1) the ALJ failed to consider all of Plaintiff's vocationally significant impairments in determining residual functional capacity and (2) the ALJ improperly evaluated Plaintiff's credibility.

The undersigned concludes that the hearing decision should be affirmed in all respects.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage

3

in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the

claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* But the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

6

## Analysis

I.     <u>The ALJ properly considered all of Plaintiff's severe impairments.</u>

In his first issue, Plaintiff contends that the ALJ failed to properly consider all of his vocationally significant impairments in determining his residential functional capacity ("RFC"). More specifically, Plaintiff argues that the ALJ failed to accommodate for his history of left shoulder surgery and discoid lupus, which the ALJ found to be severe impairments; failed to consider that Plaintiff's symptoms are exacerbated by chronic pain syndrome; and failed to determine whether Plaintiff's use of a cane and headaches or need to elevate his legs would inhibit his ability to perform the jobs that the ALJ found Plaintiff capable of performing.

A person's RFC is his ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from his impairments. *See* 20 C.F.R. § 404.1545. A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *See* SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. Jul. 2, 1996). The ALJ is responsible for determining a claimant's RFC before considering step four of the sequential evaluation process if the claimant is at the ALJ hearing level. *See* 20 C.F.R. §§ 404.1546(c), 404.1520(e), 416.920(e). In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant. *See* 20 C.F.R. § 404.1545(a) (3). The RFC assessment is a function-by-function assessment, with both exertional and non-exertional factors to be considered. *See* SSR 96-8p, 1996 WL 374184, at *3-*5.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. Jul. 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In this case, the ALJ determined that Plaintiff could perform other work that exists in significant numbers in the economy based, in part, on the finding that Plaintiff has the physical RFC to perform a limited range of light work. The ALJ found that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; can sit, stand, or walk for six hours out of an eight-hour day; can climb ramps or stairs occasionally but must avoid climbing ladders, ropes, or scaffolds and balancing; can stoop, crouch, crawl, and kneel occasionally, and reach frequently; and must avoid concentrated exposure to extreme cold. The ALJ found Plaintiff has the mental RFC to perform jobs with detailed but not complex instructions. *See* Tr. at 15. In support of

8

the RFC assessment, the ALJ considered the medical evidence of record, including reports from Plaintiff's treating sources and consultative examiners and testimony from the administrative hearing. *See id.* at 15-18.

Plaintiff first argues that the ALJ failed to properly consider and make accommodations for Plaintiff's history of left shoulder surgery, which the ALJ found to be a severe impairment. According to the ALJ, "the medical evidence confirms [Plaintiff] had AC joint repair of the left shoulder. While it is noted that [Plaintiff] experiences at times some residuals, [Plaintiff] has not received any further treatment for his left shoulder. Despite this fact," the ALJ "restricted Plaintiff to frequent reaching." *See id.* at 17, 34.

Plaintiff argues that the ALJ failed to consider testimony concerning his limitations with regard to handling and fingering and that the restriction to frequent reaching fails to differentiate between either upper extremity or to impose additional restrictions for the severe impairment to his left shoulder as a result of surgery. Plaintiff testified that he has tingling in his hands, which affects his ability to reach in all directions and to handle objects, and that he sometimes has lack of feeling in his hands. Plaintiff also testified that he would be unable to perform tasks that require repetitive pushing and pulling and that he cannot use hand tools because his hands cramp. *See id.* at 43-44.

According to the medical evidence, Plaintiff had left shoulder surgery in 1985. *See id.* at 263. Plaintiff subsequently was injured on July 17, 2009, the date of last gainful activity, during a carjacking when the carjacker drove off while Plaintiff was

9

still partially in the car and Plaintiff was dragged on the street. Plaintiff reported injuries to his left shoulder and back. *See id.* at 263, 353. The record contains no evidence of treatment for a shoulder injury during the relevant time period.

And physical examinations in the record do not find the handling or manipulative limitations that Plaintiff claimed in his testimony. *See id.* at 17, 263, 431. On December 4, 2009, James Laughlin, D.O., found Plaintiff had no deficits in the upper extremities. *See id.* at 263. On March 31, 2011, State Agency Medical Consultant ("SAMC") Cecilier Chen, M.D., found Plaintiff to have full range of motion, normal reflexes, and normal strength in the upper extremities. *See id.* at 429-32.

The undersigned concludes that substantial evidence supports the ALJ's RFC notwithstanding Plaintiff's complaints regarding the ALJ's consideration of Plaintiff's history of left shoulder surgery. Lack of treatment for an impairment during the period for which a claimant alleges disability discredits testimony that the impairment was disabling, *see Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990), and normal examinations support a nondisability finding, *see Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

Plaintiff next argues that the ALJ failed to properly consider and make accommodations for Plaintiff's discoid lupus*,* which the ALJ found to be a severe impairment, because the ALJ failed to impose a limitation that Plaintiff should avoid exposure to the sun. Plaintiff cites a medical website indicating that discoid lupus is exacerbated with increased sun exposure. *See* Dkt. No. 13 at 9 (citing www.Emedicine.medscape.com/article/1065529-overview). The ALJ found that Plaintiff

"was diagnosed with discord lupus prior to his alleged onset date and received treatment until August 15, 2011.... [Plaintiff] was lost for treatment until January 12, 2012. He presented with scarring and loss of pigment under his chin and the top of his head.... Plaintiff was referred to dermatology; however the medical evidence lacks any indication of follow-up treatment." Tr. at 17.

There is no evidence in the record concerning the effect of sun exposure on persons with discoid lupus or how sun exposure affects Plaintiff. Furthermore, as Defendant notes, the *Dictionary of Occupational Titles* indicates that two of the jobs that the ALJ found Plaintiff could perform – mail clerk and sales attendant – are performed indoors. *See* DICOT 209.687-026, 1991 WL 671813 (mail clerk); DICOT 299.677-010, 1991 WL 672643 (sales attendant). The undersigned concludes there is no reversible error in the ALJ's RFC as to Plaintiff's arguments regarding accommodations for Plaintiff's discoid lupus.

Plaintiff also alleges that the ALJ did not investigate whether Plaintiff's use of a cane, headaches, or need to elevate his legs during the workday would inhibit an individual from performing the light occupations that the ALJ found that Plaintiff could perform.

On March 3, 2011, F. J. Simmons, D.O., prescribed the "use [of] a walking cane as needed." Tr. at 427. The ALJ questioned Plaintiff about his use of a cane during the administrative hearing, and Plaintiff testified that the cane was prescribed for balance. *See id.* at 33-34. The ALJ noted that Dr. Chen found that Plaintiff could walk with a normal gait without use of an assistive device even though the cane had been

11

prescribed less than a month prior to the consultative examination. *See id.* at 17, 432. And Plaintiff does not articulate any additional limitations attributable to use of the cane that he contends the ALJ should have included in the RFC assessment.

Plaintiff testified that he experiences recurrent headaches, *see id.* at 47, and the vocational examiner ("VE") testified that headaches at the frequency described by Plaintiff would be expected to preclude an individual from maintaining employment, *see id.* at 53. But there is no objective medical evidence concerning Plaintiff's subjective complaints of headaches. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("Subjective complaints of pain must also be corroborated by objective medical evidence."). On February 18, 2010, Kathy A. Toler, M.D. noted that Plaintiff experienced headaches shortly after his injury in 2009, but the headaches had improved. *See id.* at 343. There is no other evidence in the record of complaints about or treatment for headaches, nor is there evidence indicating limitations attributable to headaches.

Plaintiff also testified that he needs to elevate his legs two to three times for ten to fifteen minutes each day, *see id.* at 46, and the VE testified that the jobs that she described, and which the ALJ found that Plaintiff could perform, would not provide for leg elevation during the course of the workday and that an individual who must elevate his legs two to three times daily would be precluded from performing those jobs, *see id.* at 53. Plaintiff does not refer to any objective medical evidence to support his need for leg elevation. But the record shows that on August 12, 2009, shortly after Plaintiff's injury, Michele Beavers, D.C., found that Plaintiff demonstrated normal strength,

normal gait, normal heel walk, normal toe walk, and full range of motion in the lower extremities. And, on March 31, 2011, Dr. Chen found that Plaintiff could heel walk, toe walk, tandem walk, sit, and stand normally. *See id.* at 432.

Accordingly, the undersigned concludes there is no reversible error in the ALJ's RFC notwithstanding Plaintiff's arguments regarding a failure to investigate whether Plaintiff's use of a cane, headaches, or need to elevate his legs during the workday would inhibit an individual from performing the light occupations that the ALJ found that Plaintiff could perform.

Plaintiff finally argues that the ALJ failed to consider whether Plaintiff has chronic pain syndrome and whether chronic pain syndrome produces either physical or mental limitations in Plaintiff's ability to function. The undersigned concludes that this is no basis for finding error in the ALJ's decision. Dr. Chen diagnosed Plaintiff with chronic pain syndrome based on Plaintiff's "subjective report" but "with no significant clinical findings" of chronic pain syndrome from the consultative examination. *Id.* at 432. The ALJ noted Dr. Chen's diagnosis of chronic pain syndrome. *See id.* at 17. Plaintiff cites to a medical website indicating that chronic pain syndrome may cause various limitations, including disability out of proportion with impairment. *See* Dkt. No. 13 at 8 (citing www.Emedicine.medscape.com/article/310834-overview). But Plaintiff does not refer to any objective medical evidence to support his claim that he is limited by chronic pain syndrome, and the only mention of chronic pain syndrome in the record is based on Plaintiff's subjective report with "no significant finding [from] [Dr. Chen's] exam." Tr. at 432. "For Social Security disability purposes,

an 'impairment' is an abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and in fact must be established by medical evidence as opposed to the claimant's subjective statement or symptoms." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 867 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.908). And, more specifically, "[s]ubjective complaints of pain must also be corroborated by objective medical evidence." *Chambliss*, 269 F.3d at 522.

The undersigned concludes that the ALJ properly considered all of Plaintiff's severe impairments in determining Plaintiff's RFC.

2.   <u>The ALJ properly evaluated Plaintiff's credibility.</u>

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms from his medically determined impairments were not credible to the extent that they were inconsistent with the ALJ's RFC determination. *See* Tr. at 16-18. The ALJ found that "the limitations alleged were neither consistent with nor well supported by the objective medical evidence" and quoted *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994), which states "pain constitutes a disabling condition when it is constant, unremitting, and wholly unresponsive to treatment." Tr. at 16.

Plaintiff argues that the ALJ failed to properly evaluate his credibility because the ALJ allegedly did not consider all of Plaintiff's impairments and because the ALJ allegedly failed to consider chronic pain syndrome, which Plaintiff argues is characterized by disability out of proportion with impairment.

14

In making a credibility determination, the ALJ must consider the objective medical evidence, as well as other factors, including:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

(7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008) (discussing factors). But "[t]he ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011).

When discussing Plaintiff's credibility and RFC, the ALJ noted that Plaintiff experienced some pain due to sustained injuries to his back, but the medical evidence showed that Plaintiff was treated conservatively with steroid injections, chiropractic care, and medication. Plaintiff received physical therapy but continued to experience back pain despite conservative treatment. Plaintiff's neurologist, Kathy A. Toler, M.D.,

15

reported that an EMG confirmed bilateral L5-S1 radiculopathy on January 22, 2010, and, on March 30, 2010, Michele Bevers, D.C., noted that Plaintiff had made marked improvement with the current treatment plan. *See id.* at 16, 365. There was a gap in treatment for back pain from March 30, 2010 to March 1, 2011, when Plaintiff was treated with medication and a cane was prescribed for ambulation as needed.

Plaintiff underwent an internal medicine consultative examination on March 31, 2011. He reported chronic low back pain but was not seeing a doctor for it. Plaintiff's straight leg raise was 75 bilaterally with no radiculopathy, and Plaintiff was able to walk without an assistive device. An x-ray of the lumbar spine revealed minimal spondylosis at L4-5, and Plaintiff's gait was normal. Dr. Chen diagnosed Plaintiff with low back pain, possibly from a muscular pain pattern, and chronic pain syndrome, based on Plaintiff's subjective complaints and without significant clinical findings. *See id.* at 432.

The ALJ concluded that Plaintiff experiences at most some back pain and noted that Plaintiff was seen for high blood pressure check-ups and medication refills but made no mention of severe back pain. Furthermore, while Plaintiff presented with back pain in December 2011, with positive straight leg raise at 60 degrees and a pain rating of 5 out of 10 in severity, an MRI showed only subtle disc space narrowing at L4-5 due to degenerative disc disease, which did not support Plaintiff's assertions of disabling pain. Plaintiff subsequently requested and received physical therapy and was discharged after successfully completing back class series.

The ALJ also recounted Plaintiff's testimony that he is precluded from work due to back pain. At the hearing, Plaintiff testified that he needed to get up and down about two times in fifteen minutes and had difficulty twisting at the waist. But the ALJ observed Plaintiff getting up and down and doing fast twisting at the waist and big arm circles and other movements. The ALJ explained that these observations undermined Plaintiff's allegations because, if he were experiencing severe back pain, he would need to be more careful and would not be rapidly twisting at the waist. And, when Plaintiff was questioned about his inability to perform posturals, Plaintiff responded that he was unable to do them because of discomfort, not physical inability.

The ALJ found Plaintiff's credibility reduced by several other factors. According to the ALJ, the evidence showed that, at his alleged onset date, Plaintiff apparently quit his heavier job as a custodian but kept his home health care job and was making just under substantial gainful activity ("SGA") levels with no sign that he could not have performed the job at SGA level if the hours were available to him. According to a disability report, Plaintiff reported that he was still working and said his condition first started bothering him on his alleged onset date but denied that his condition required him to make changes at work. Plaintiff reported to Dr. Chen that he is able to cook, wash clothes, go shopping, drive, and walk a block a day. In February 2012, when Plaintiff was presented with a jury summons, he marked as an excuse for missing jury duty as being a primary caretaker, but Cornelia W. Tan, M.D., would not make a medical statement in support of that excuse because she did not know for whom Plaintiff was caring. It also was noted that Plaintiff had no severe medical

17

disability to prevent serving jury duty. And the ALJ observed that subsequent follow-up notes revealed normal range of motion in the musculoskeletal system and neck. The ALJ nevertheless imposed the limitations in Plaintiff's RFC.

Plaintiff argues that the ALJ failed to properly evaluate his credibility because he "may" have a chronic pain syndrome and "the very nature of a chronic pain syndrome is disability out of proportion with impairment." Dkt. No. 13 at 11-12. As support, Plaintiff quotes SSR 88-13 concerning the evaluation of pain, which states that, "[w]hen medical signs and laboratory findings do not substantiate any physical impairment capable of producing the alleged pain (and a favorable determination cannot be made on the basis of the total record), the possibility of a mental impairment as the basis for the pain should be investigated." SSR 88-13, 1988 WL 236011, at *1 (July 20, 1988) (superceded by SSR 95-5p, 1995 WL 670415 (S.S.A. Oct. 31, 1995); current version at SSR 96-7p, 1996 WL 374186).

When considering symptoms such as pain, which "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the [ALJ] must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements." SSR 96-7p, 1996 SL 374186, at *2; *see also* 20 C.F.R. § 404.1529. And, as discussed above, a claimant's subjective complaints must be corroborated by the medical evidence. *See Chambliss*, 269 F.3d at 522.

Here, the only mention of chronic pain syndrome in the record was based on Plaintiff's subjective statements to the SAMC, *see* Tr. at 432, and the ALJ could

properly determine that the record does not corroborate Plaintiff's allegations concerning chronic pain. As discussed above, Plaintiff claims that his shoulder impairment caused handling and manipulative limitations, but Dr. Chen found Plaintiff to have full range or motion, normal reflexes, and normal strength in the upper extremities. Plaintiff argued that he needed to use a cane and elevate his legs, but physicians found normal heel walk, normal toe walk, normal gait, normal strength, and full range of motion in the lower extremities. Plaintiff asserts that he experienced disabling headaches, but Dr. Toler noted that Plaintiff complained of headaches only briefly after the injury and that the headaches had improved.

Plaintiff also argues that the ALJ improperly relied on his chiropractor's March 30, 2010 statement that Plaintiff reported "marked improvement" even though he still had residual pain and limited range of motion. Plaintiff asserts that the chiropractor's statement is inconsistent with findings of the neurologist who reported one month earlier that Plaintiff had diminished reflexes, weakness of the left lower extremity, and significantly positive strait leg raising on the left. Plaintiff also asserts that the chiropractor's conclusions are inconsistent with the electrodiagnostic testing, which found chronic L5-S1 radiculopathy. But, according to the neurologist, Plaintiff had "significant disc abnormality in the lunbrosacral spine" and would have to live with a significant degree of discomfort if he did not elect to have surgery. There is no conflict between the neurologist's findings of back pain and radiculopathy and the chiropractor's subsequent statement that Plaintiff had improved since his injury.

In his reply, Plaintiff argues that the ALJ overlooked the finding of a "large disc protusion at L5-S1 of 5 mm," which he claims supports his subjective complaints of pain. The ALJ noted at Step 2 that, on October 29, 2009, an MRI of the lumbar spine ordered by James E. Laughlin, D.O., "revealed a large disk protrusion at L5-S1 of 5 mm and some spondylosis and a 3 mm protrusion at L4-5." Tr. at 14, 250. In determining Plaintiff's RFC and evaluating credibility, the ALJ noted that, on January 22, 2010, Plaintiff continued to experience back pain despite conservative treatment and, referring to Plaintiff's neurologist's report, an EMG confirmed chronic bilateral L5-S1 radiculopathy. The ALJ also noted that a subsequent MRI taken in December 2011 "showed only subtle disc space narrowing at L4-5 due to degenerative disc disease, which does not support claimant's assertions of disabling pain." *Id.* at 17.

Plaintiff suggests that the ALJ overlooked or improperly disregarded the earlier finding of a large disk protrusion at L5-S1 of 5 mm and Dr. Toler's 2010 diagnosis of post-traumatic lumbar disc disease with L5-S1 radiculopathy and post-traumatic disc protrusion at L4-5 as well as other medical records from 2010 and 2011. *See* Dkt. No. 15 at 2-3. The undersigned disagrees with this characterization. The ALJ's decision acknowledged this evidence but, as to Plaintiff's pain, focused on the later December 2011 MRI showing only subtle disc space narrowing at L4-5 due to degenerative disc disease and other evidence from 2012 reflecting the intensity and persistence of Plaintiff's pain. *See* Tr. at 16-18. The ALJ was entitled, as she did, to make her findings related to pain based on the overall picture projected by the entire record.

After considering the ALJ's decision in light of all of the evidence of record, the undersigned concludes that Plaintiff has not shown that the ALJ failed to properly evaluate Plaintiff's credibility.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 8, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE